Redacted Version

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | |
|---|---|
| L-3 SERVICES, INC.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Civil Action No. ________<br><br>**FILED UNDER SEAL**<br>**REQUEST FOR PROTECTIVE ORDER PENDING** |

**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE AND DECLARATORY RELIEF**

For its Complaint against the Defendant United States, acting through the Department of the Army ("Army"), Plaintiff L-3 Services, Inc. ("L-3"), by undersigned counsel, states as follows:

## NATURE OF THE ACTION

1. This is a bid protest of three large business awards made on March 20, 2008, by the Army under Solicitation No. W91QUZ-07-R-0007 (the "RFP" or "Solicitation") to Systems Research and Applications Corporation ("SRAC"), Wyle Information Systems, LLC ("Wyle"), and Booz Allen Hamilton ("BAH") (collectively the "Awardees"). Respectively, the Army awarded contracts W91QUZ-08-D-0005 (to SRAC), W91QUZ-08-D-0008 (to Wyle), and W91QUZ-08-D-0009 (to BAH), (collectively the "Contracts").

2. L-3 should have received a contract award because it [redacted]. Moreover, in a properly conducted best value procurement and under the evaluation criteria, L-3 should

have received the highest best value rating, and in all events, would have received an award. The Army compounded this error by misevaluating both L-3 and the Awardees, as well as by improperly making all of the award decisions [redacted]

3. Accordingly, L-3, seeks preliminary and permanent injunctive and declaratory relief against the Army, in the form of one or more orders: (i) granting L-3's Motion for preliminary injunctive relief, suspending any performance by the Army under the Contracts and barring any recruitment of L-3's employees by or on behalf of any of Awardees during the pendency of this action; (ii) granting L-3's Motion for permanent injunctive and declaratory relief, finding such awards to be invalid and setting them aside, and directing that a contract be awarded to L-3 or that the proposals submitted in response to the RFP be properly reevaluated; and (iii) granting such other relief as this Court deems just and appropriate under the circumstances.

## JURISDICTION

4. This Court has jurisdiction over this bid protest pursuant to 28 U.S.C. § 1491(b). L-3 is an "interested party" within the meaning of the Administrative Dispute Resolution Act of 1996, Pub. L. No. 104-320, as L-3 was next-in-line for award and would have been awarded a contract had the Army acted in accordance with the RFP's evaluation criteria as well as the procurement laws and regulations.

## PARTIES

5. Plaintiff, L-3 Services, Inc., is a wholly-owned subsidiary of L-3 Communications Corporation, with its headquarters at 1320 Braddock Place, Sixth Floor, Alexandria, VA 22314.

6. The Defendant is the United States of America, acting through the Department of the Army.

**PMSS2 SOLICITATION**

7. The Program Management Support Services II ("PMSS2") procurement is to acquire a range of Information Technology and related Program Management Support Services required by the Program Executive Office, Enterprise Information Systems ("PEO EIS") headquarters, directorates, program/project/product offices and the Office of the Army Chief Information Officer/G6 ("CIO/G6"). Exh. 1,[1] Agency Report ("AR") Tab 4 at § L.1.[2]

8. L-3 and another contractor, BearingPoint, are the incumbents on the current Program Management Support contract performing the same functions as those sought in the PMSS2 solicitation.

9. The Army intended to award five Indefinited Delivery Indefinite Quantity ("IDIQ") contracts to the Offerors determined to be the most advantageous to the Government. *Id.* at § M.2.1. Three of the awards would be made "without regard to the size of the Offeror" and two awards would be reserved for small businesses. *Id.* The Army reserved the right to make a third group of additional awards without regard to size, or to make more or less awards in each category. *Id.*

10. Subsequent to award of the Contracts, all task orders were to be competed by the Army among the Awardees. *Id.* at §G.11-12. The competition for future task orders will again require submission of new technical and cost proposals. *Id.*

11. Section M of the RFP established the evaluation criteria. The Offerors were to be evaluated on five factors: (1) Corporate Capability, (2) Performance Risk, (3) Technical/Management, (4) Price, and (5) Small Business Participation. *Id.* at § M.3.1.

---

[1] Exhibit numbers refer to the exhibits attached to L-3's Memorandum of Points and Authorities.
[2] References to the Agency Record refer to the documents submitted by the Army to the Government Accountability Office on May 14, 2008.

12. In evaluating the factors, Corporate Capability was more important than Performance Risk, which was more important than Technical/Management. Technical/Management was more important than Price, which was more important than Small Business Participation.

13. The non-price factors, collectively, were significantly more important than Price. *Id.* at § M.3.2.

14. The first factor, Corporate Capability had two subfactors: 1) Knowledge of and Experience with DoD/Army Acquisition Policies and Procedures; and 2) Performance Capability and Resources to Support PEO EIS and CIO/G6 Programs. *Id.* Of these subfactors, Knowledge of and Experience with DoD/Army Acquisition Policies and Procedures was more important than Performance Capabilities and Resources.

15. Under the first Corporate Capability subfactor, the RFP directed the Army to evaluate Offerors on their "knowledge of and experience with DoD and Army Acquisition policies and processes such as the DoD 5000 series, information assurance, Independent Validation and Verification ("IV&V")," and DoD Information Technology Security Certification and Accreditation Process "in order to assess the Offeror's ability to manage and support information technology programs." *Id.* at § M.4.1.1.1.

16. The second Corporate Capability subfactor required the Army to evaluate the Offeror's corporate capability to provide PM support for the nine areas in the Performance Work Statement and for the PEO EIS and CIO/G6 programs described. This evaluation included the Offeror's current corporate quality business processes and certifications to be used and the Offeror's proposed qualified resources currently available. *Id.* at § M.4.1.2.1-M.4.1.2.3

17. The third factor, Technical/Management, had two equally weighed subfactors: 1) Understanding of the PM Support Required; and 2) Project Management Plan. *Id.*

18. In evaluating the first subfactor of the third factor, Understanding of the PM Support Required, the Army was to evaluate the Offeror's overall program management approach to assess its understanding of the scope and support required for the PEO EIS and CIO/G6 programs. *Id.* at § M.4.3.1.

19. Under the second subfactor for Technical/Management, the Army was to evaluate the Offeror's program management structure and tools to be used; its approach to identify, track, monitor, manage, and mitigate the risk associated with program management support; its methodology for recruitment, training and retention of qualified and security-cleared personnel; its approach to manage and coordinate its subcontractor efforts; and its proposed disincentives for the contract metrics in the Performance Work Statement. *Id.* at § M.4.3.2.

20. Under Small Business Participation, the RFP directed the Army to evaluate the Offeror's approach to meeting or exceeding the Government's minimum mandatory requirement for overall Small Business participation and the non-mandatory objectives. These included an overall requirement of 20% small business participation and varying objectives for Small Disadvantaged Businesses (6%), Woman-Owned Small Businesses (5%), Service-Disabled Veteran-Owned Small Businesses (3%), Veteran-Owned Small Businesses (3%), and Hub-Zone Small Businesses (1%). *Id.* at §§ M.4.5.1 & M.4.5.2.

21. The RFP repeatedly distinguished between the "Offerors" themselves and their full teams, including subcontractors. For example, the use of the term Offeror in conjunction with the term "subcontractors" implied that "Offeror" refers only to the prime contractor. *See Id.* at §M.4.2.1 ("The Government will evaluate the Performance Risk Factor based on the quality

and relevancy of the Offeror's past performance, as well as that of its proposed major subcontractor(s)."); *Id.* at § M.4.3.2.4 ("The Government will evaluate the Offeror's approach to manage and coordinate its subcontractor efforts.").

**EVALUATION OF OFFERORS**

22. The SSEB evaluated the proposals using an adjectival rating system.

23. Under Factor 1, Corporate Capability, the ratings were as follows:

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

24. Under Factor 2, Performance Risk, the ratings were as follows:

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

25. Under Factor 3, Technical/Management, the ratings were the same as under Factor 1, Corporate Capability.

26. Factor 4, Price, was not rated.

27. Under Factor 5, Small Business Participation, the ratings were as follows:

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

L-3's Ratings

28. Under the first and most important factor, Corporate Capability [redacted]

29. Under Factor 1, Subfactor 1, Knowledge of and Experience with DoD/Army Policies and Processes, L-3 [redacted].

30. Under Factor 1, Subfactor 2, Performance Capability and Resources to Support PEO EIS and CIO/G-6 Programs, [redacted]

31. Under Factor 2, Performance Risk, [redacted]

32. Under Factor 3, Technical/Management, [redacted].

33. [redacted] under Factor 3, Subfactor 1, Understanding of PM Support Required [redacted]

34. Under Factor 3, Subfactor 2, Program Management Plan [redacted]

35. Under Factor 4, [redacted].

36. Under Factor 5, Small Business Participation [redacted].

BAH's Ratings

37. Under the first and most important factor, Corporate Capability, [redacted]

38. Under Factor 1, Subfactor 1, Knowledge of and Experience with DoD/Army Policies and Processes, [redacted]

39. Under Factor 1, Subfactor 2, Performance Capability and Resources to Support PEO EIS and CIO/G-6 Programs, [redacted]

40. Under Factor 2, Performance Risk, [redacted]

41. Under Factor 3, Technical/Management, [redacted].

42. Under Factor 3, Subfactor 1, Understanding of PM Support Required, [redacted]

43. Under Factor 3, Subfactor 2, Program Management Plan, [redacted]

44. Under Factor 4, [redacted].

45. Under Factor 5, Small Business Participation, [redacted]

Wyle's Ratings

46. Under the first and most important factor, Corporate Capability, [redacted].

47. Under Factor 1, Subfactor 1, Knowledge of and Experience with DoD/Army Policies and Processes, [redacted]

48. Under Factor 1, Subfactor 2, Performance Capability and Resources to Support PEO EIS and CIO/G-6 Programs, [redacted]

49. Under Factor 2, Performance Risk, [redacted]

50. Under Factor 3, Technical/Management [redacted]

51. Under Factor 3, Subfactor 1, Understanding of PM Support Required, [redacted]

52. Under Factor 3, Subfactor 2, Program Management Plan, [redacted].

53. Under Factor 4, [redacted]

54. Under Factor 5, Small Business Participation, [redacted].

55. Wyle [redacted]

SRAC's Ratings

56. Under Factor 1, Corporate Capability, [redacted]

57. Under Factor 1, Subfactor 1, Knowledge of and Experience with DoD/Army Policies and Processes, [redacted]

58. Under Factor 1, Subfactor 2, Performance Capability and Resources to Support PEO EIS and CIO/G-6 Programs [redacted]

59. Under Factor 2, Performance Risk, [redacted]

60. Under Factor 3, Technical/Management, [redacted]

61. Under Factor 3, Subfactor 1, Understanding of PM Support Required, [redacted]

62. Under Factor 3, Subfactor 2, Program Management Plan, [redacted]

63. Under Factor 4, [redacted]

64. Under Factor 5, Small Business Participation, [redacted]

65. [redacted]

Summary of Evaluations

66. A Source Selection Evaluation Board ("SSEB") was established in the procurement in order [redacted]. The SSEB's findings are summarized in the following chart:

| FACTOR/ SUBFACTOR | L-3 | BAH | SRAC | Wyle |
|---|---|---|---|---|
| 1. Corporate Capability | [redacted] | | | |
| Subfactor 1 | | | | |
| Subfactor 2 | | | | |
| 2. Performance Risk | | | | |
| 3. Technical Management | | | | |
| Subfactor 1 | | | | |
| Subfactor 2 | | | | |
| 4. Price | | | | |
| 5. Small Business Participation | | | | |

Exh. 2, AR Tab 84 (SSA Final Briefing) at 1st unnumbered page.

Although [redacted]

[3] L-3 was determined by the SSA [redacted].

## SOURCE SELECTION DECISION

67. A Source Selection Authority ("SSA") was established [redacted].

**TABLE 1: AWARDS WERE MADE TO** [redacted]

| PMSS2 OFFERORS (in ascending price order) | BUSINESS SIZE | FINAL EVALUATED TOTAL CONTRACT LIFE PRICE |
|---|---|---|
| PY [BAH] | [redacted] | |
| P4 [SRAC] | | |
| PS [Wyle/RSIS] | | |
| [Redacted] | | |
| [Redacted] | | |
| PE [L-3] | | |
| [Redacted] | | |
| [Redacted] | | |
| [Redacted] | | |

[redacted]

68. In conducting her analysis, the SSA compared [redacted] In many cases, this was [redacted] At other times, [redacted].

<u>The Evaluation of L-3 and BAH</u>

69. [redacted]

70. Under Factor 1, Subfactor 1, [redacted]

71. Nonetheless, without any further analysis or explanation, the SSA [redacted] That is demonstrably incorrect on the record.

72. Under Factor 1, Subfactor 2, [redacted] In marked contrast, [redacted]

73. Although, the SSA admitted the [redacted]

74. Under Factor 2 ("Performance Risk"), [redacted].

75. L-3's [redacted].

76. Under Factor 3, Subfactor 1, the SSA determined that:

[redacted]

77. This analysis was incorrect, incomplete, and disparate [redacted]

78. The SSA elsewhere or under this Subfactor 1 [redacted]

79. It is irrational, therefore, for the SSA [redacted].

80. Under Subfactor 2, the SSA [redacted]

81. Overall, the SSA determined [redacted] That conclusion about Subfactor 1 was incorrect, irrational, arbitrary, capricious and contrary to the evaluation record

82. In her analysis of Factor 5, Small Business Participation, the SSA [redacted].

83. When the SSA made the final award decision between BAH and L-3, she stated:

> [redacted].

[redacted] These conclusions were incorrect, irrational, arbitrary, capricious, and contrary to the evaluation record.

The Evaluation of L-3 and Wyle

84. [redacted].

85. The SSA determined [redacted]

86. Under Factor 1, [redacted].

87. Under Factor 1, Subfactor 1, the SSA [redacted].

88. Factor 1, Subfactor 2, the SSA [redacted]

89. Even though [redacted]

[redacted]

90. Under Factor 2, the SSA's analysis [redacted]

[redacted] Under Factor 3, Subfactor 1, the SSA [redacted]

[redacted].

92. Under Factor 3, Subfactor 2, the SSA determined that

[redacted].

93. Her point about [redacted] The SSA had [redacted]

94. It was also improper for the SSA to [redacted]

[redacted] Under Factor 3, the SSA found [redacted]

[redacted]

[redacted]

96. Under Factor 5, the SSA [redacted]

97. [redacted] the SSA concluded:

[redacted]

[redacted] This conclusion was incorrect, irrational, arbitrary, capricious, and contrary to the evaluation record.

<u>The Evaluation of L-3 and SRAC</u>

98. The SSA determined that [redacted] but awarded a contract to SRAC.

99. Under [redacted]

100. Under Factor 1, Subfactor 1, the SSA found [redacted]

101. Under Factor 1, Subfactor 2, the SSA determined [redacted]

102. Once again, without analysis, the SSA determined [redacted]

103. Under Factor 3, the SSA's [redacted]

[redacted]

[redacted].

104. Under Factor 5, the SSA [redacted]

105. [redacted]:

[redacted]

[redacted] These conclusions were incorrect, irrational, arbitrary, capricious, and contrary to the evaluation record.

## AWARD AND DEBRIEFING

106. On March 20, 2008, the Army notified L-3 via letter that it was not selected for award. L-3 timely requested a debriefing on that same day.

107. On April 8, 2008, the Army conducted a telephonic debriefing with L-3. During the debriefing, L-3 learned [redacted].

108. The Army also stated that it [redacted]

109. Finally, during the debriefing, the Army also explained [redacted]

110. Despite the fact that [redacted] the Army did not provide any tradeoff information during the debriefing.

## THE GAO PROTEST

111. On April 14, 2008 L-3 timely filed its initial protest with the Government Accountability Office ("GAO"). The Army stayed performance by the awardees under the Contract pending resolution of the protest at GAO. 31 U.S.C. § 3553(d)(3); 48 C.F.R. § 33.104(c)(1).

112. On April 18, 2008, L-3 timely filed a supplemental protest with the Government Accountability Office ("GAO"), and on May 9, 2008, L-3 filed a second supplemental protest.

113. On May 14, 2008, the Army filed its first Agency report and produced a redacted version of the agency record.

114. On May 27, 2008, L-3 filed its third supplemental protest based on the information disclosed in the agency record, as well as its comments on the agency report.

115. Before the Agency responded to L-3's third supplemental protest, the GAO dismissed the proceedings because of Case No. 08-409C filed with this Court by Femme Comp. Inc. The stay was dissolved on the same date.

## DECLARATORY AND INJUNCTIVE RELIEF IS NECESSARY

116. An actual and justiciable controversy exists between L-3 and the Army concerning the validity of the Army's decision to award the Contract to BAH, SRAC and Wyle.

117. The Army's decision to award the Contract to BAH, SRAC and Wyle is arbitrary, capricious, an abuse of discretion and otherwise in violation of procurement laws and regulations.

118. Immediate performance by BAH, SRAC and Wyle will harm L-3.

119. The Army, by contrast, will suffer no cognizable harm if the Court grants injunctive relief.

120. Injunctive relief also is in the public interest because the public has an interest in preserving the integrity of the procurement process by requiring the government to follow its procurement laws and regulations. The Army's numerous errors throughout the procurement have cast a pall on the integrity of this procurement.

## Count I

## THE ARMY FAILED TO ADHERE TO THE EVALUATION REQUIREMENTS OF THE RFP

121. L-3 realleges each and every allegation set forth in paragraphs 1 through 120 above as if set forth herein in their entirety.

122. The SSA's decision to award contracts to the Awardees was arbitrary and capricious, an abuse of discretion and otherwise in violation of procurement laws and regulations because she and the Army failed to adhere to the RFP and she based her decision on the faulty evaluation of the SSEB.

123. The SSA did not conduct a legally or factually correct best value tradeoff, but rather concluded that the proposals of the Awardees were the best value to the Army [redacted]

124. The SSA failed to treat Offerors equally, and her decision [redacted]

## Count II

## THE SSEB MADE SIGNIFICANT EVALUATION ERRORS THAT ARE REFLECTED IN THE SSA'S DECISION

125. L-3 realleges each and every allegation set forth in paragraphs 1 through 124 above as if set forth herein in their entirety.

126. The SSEB's disparately treated L-3 by [redacted]

127. The SSEB's evaluation of [redacted] under the Small Business Factor was contrary to the clear letter of the RFP's rating scheme and is therefore arbitrary and capricious.

128. The Army's evaluation of the Offerors' [redacted] was arbitrary and capricious because the Army [redacted].

129. [redacted].

130. The Army's failure to [redacted] that was arbitrary and capricious.

131. The Army's technical evaluation violated the RFP and was arbitrary and capricious because [redacted].

132. The Army's evaluation of [redacted]

133. In instances where [redacted] resulting in an award decision that was arbitrary and capricious.

134. In other instances, the SSA [redacted].

## PRAYER FOR RELIEF

WHEREFORE, L-3 by this Complaint requests that the Court grant:

1) L-3's Motion for a Preliminary Injunction, suspending any performance by the Army and the Awardees under the Contracts, and barring any recruitment of L-3's employees or consultants by or on behalf of Awardees, during the pendency of this action;

2) L-3's Motion for Permanent Injunctive and Declaratory Relief, declaring that the Army's award of the Contracts to Awardees was arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law, and therefore is invalid; and directing that a contract be awarded to L-3 or that the proposals be properly reevaluated in accordance with the RFP; and

3) Any such other relief as this Court deems just and appropriate under the circumstances.

Respectfully submitted,

W. Jay DeVecchio
JENNER & BLOCK LLP
1099 New York Avenue, N.W.
Suite 900
Washington, D.C. 20001-4412
(202) 639-6893 Telephone
(202) 637-6365 Protected Facsimile

Counsel for Plaintiff
L-3 Services, Inc.

Dated: June 16, 2008

Of Counsel:

Kevin C. Dwyer
Edward Jackson
Dan E. Chudd
Damien C. Specht

JENNER & BLOCK LLP
1099 New York Avenue, N.W.
Suite 900
Washington, DC 20001-4412

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a copy of this Complaint to be served this 16th day of June, 2008 by hand delivery as follows:

Kenneth David Woodrow
Civil Division, Commercial Litigation Branch
1100 L Street, NW, Suite 11030
Washington, D.C. 20530
(202) 353-0513 Telephone
(202) 514-7969 Facsimile

W. Jay DeVecchio